### BILLINGS MANN *vs*. CHARLES H. BLANCHARD.

No action can be maintained to charge a defendant upon or by reason of false representations concerning the credit and ability of another, made in order to induce the plaintiff to indorse a note signed by such other person, which the defendant received and used for his own benefit, unless the representations were made in writing.

TORT. At the trial in the superior court, before *Morton*, J., a verdict was returned for the defendant, and the plaintiff alleged exceptions. The facts are stated in the opinion.

*G. F. Hoar*, for the plaintiff.

*F. H. Dewey*, for the defendant.

HOAR, J. It was held in *Medbury* v. *Watson*, 6 Met. 246, that Rev. Sts. *c*. 74, § 3, was merely a reënactment of the *St*. of 1834, *c*. 182, § 5, and is to receive the same construction. To maintain an action "to charge any person upon or by reason of any representation or assurance made or given, concerning or relating to the character, conduct, credit, ability, trade or dealings of any other person," does not therefore require that the representation or assurance shall be "made in writing, signed by the party to be charged therewith," unless in those cases where it is made "to the intent or purpose that such person may obtain credit, money or goods thereupon."

Mann *v.* Blanchard.

In this action it was alleged in the declaration, and the plaintiff offered to prove, that the defendant, by means of false representations concerning the ability and credit of one Charles Mann, induced the plaintiff to indorse a note signed by the said Charles Mann, which the defendant received, and used for his own benefit. The judge who presided at the trial ruled that this was a case within the statute, and that the action cou d not be maintained unless the representations were in writing.

We think this instruction was right. The contract into which the plaintiff was induced to enter, by means of the false representations, was in substance this; that he would become responsible, for the benefit of the defendant, upon a contract in which Charles Mann was the principal, and primarily liable. It is argued on behalf of the plaintiff, that the leading intent of the defendant was to obtain an advantage to himself — to obtain the plaintiff's signature to be used for his own profit — and not to obtain any credit for Charles Mann.

But a careful consideration has led the court to the conclusion, that the object and purpose of the representations were, in the first instance, to induce the plaintiff to give credit to Charles Mann; and that the benefit which the defendant proposed to secure to himself was the result of the credit thus given. It cannot be easily distinguished in principle from the case which would have, arisen, if the defendant had asked the plaintiff to lend Charles Mann the money to enable him to pay the note on which the defendant was liable, and had made the false representations to induce him to do it. In such a case, we cannot think that the use to be made of the money, although directly profitable to the defendant, would alter the fact that the representations were concerning the credit of another, with the direct intent that he should obtain money thereupon; and so would come within the letter and spirit of the statute. We cannot, by construction, limit the effect of the language used by the legislature so far as to hold, in a case which that language clearly describes, and in the absence of any exception indicated by it, that the protection which the statute provides shall be unavailing. Where the benefit to be obtained by the defendant

is to be gained wholly through the credit given to another in consequence of the alleged representations, the primary object of those representations must be regarded as the procurement of the credit.

It is urged on behalf of the plaintiff, that the case at bar cannot be distinguished from that of passing the bill of a broken bank, by means of false statements as to its value. But one obvious distinction is, that in passing the bank bill no new or additional credit is given to the bank. The bill is already in circulation, and the bank is indebted to its full nominal value. It is the mere transfer of the credit from one holder to the other.

The same view might perhaps be taken of the case of the transfer of any note of a third person from the defendant to the plaintiff, by means of fraudulent statements as to its value ; no new credit being given to the maker. It would be merely the sale of an existing obligation.

No adjudged case in England or America has come under our observation, or been cited by counsel, which conflicts with the opinion above stated; and the recent case of *Wells* v. *Prince*, 15 Gray,    , is in entire concordance with it. That was an action against an insurance agent, in which it was sought to charge him upon his representations as to the credit of an insurance company in which he had induced the plaintiff to effect an insurance ; and although it was alleged, and evidence was offered to show, that the motive of the defendant in making the representations was to secure his commissions as agent, yet as that profit would accrue only in consequence of the credit given to the company, the case was held to be within the statute. See also *Kimball* v. *Comstock*, 14 Gray, 508.

We do not mean to decide that the plaintiff, upon the facts alleged in his declaration, is wholly without a remedy. If the indorsement were made at the defendant's request, and for his accommodation, an action for money paid to his use would present a different question, upon which we give no opinion.

*Exceptions overruled.*